The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners denial of benefits and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. AIG Insurance Company was the carrier on the risk.
2. The plaintiffs average weekly wage was $300.00, which yields compensation rate of $200.00 per week.
3. The issues for determination are:
 a. Whether the Industrial Commission has jurisdiction over this claim;
 b. Whether the employment relationship existed between the plaintiff and the defendant-Coys Auto Parts at the time of the injury giving rise to this claim.
 c. Whether the plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on June 17, 1996, and if so, to what benefits may he be entitled under the Act; and
 d. Whether the plaintiffs claim is barred, pursuant to the provisions of N.C. Gen. Stat. 97-12(3), due to plaintiffs willful intent to injure or kill another.
 * * * * * * * * * * *
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On 17 June 1996, the defendant-employer, Coy Honeycutt, regularly employed three or more employees in the normal course of operating his automotive parts business.
2. The plaintiff was hired by the defendant-employer in September of 1995.
3. On 17 June 1996, the plaintiff was sent to his employers house to remove some furniture and a refrigerator from the house and transport them to the defendant-employers shop.
4. When the plaintiff returned to the shop, Mr. Honeycutt told him he needed to load the rollback and go deliver parts. The plaintiff had started loading the rollback when he noticed the refrigerator sitting in the middle of the floor unplugged. Plaintiff went into the office to tell Mr. Honeycutt that he needed to get it plugged in or the food was going to thaw. At that point an argument occurred between plaintiff and Mr. Honeycutt. Mr. Honeycutt cursed the plaintiff and said you don't tell me what to do. He told the plaintiff that he had a bad attitude. Then the plaintiff made a derogatory comment about Mr. Honeycutts family being too sorry to do anything, referring to the refrigerator that was unplugged yet contained frozen foods. Plaintiff was then told not to leave on the truck and plaintiff went out into the garage and began to help Mr. Dwiggins pulling parts off of a motor.
5. The plaintiff told Mr. Dwiggins and another employee, Virgil, that Coy had gotten on him for nothing and if he cussed him again, he would "whip Coys goddamn ass. Virgil then went to the office and told Mr. Honeycutt what the plaintiff had said. The plaintiff was in the shop approximately thirty minutes helping Mr. Dwiggins, Jr. work on a motor when Mr. Honeycutt approached him and told him to get up.
6. Of the other employees who testified, none mentioned anything about the plaintiff coming out of the office and saying that he had been fired or told to leave. Mr. James Dwiggins, Jr. testified that they were in the office when the plaintiff told Mr. Honeycutt about the meat thawing and that they started arguing, so he went back to the shop. Mr. Dwiggins, Jr. said the plaintiff did say he would kick Coys ass if he cussed him like that again, but that he just considered that to be shop talk. Mr. Dwiggins, Jr. said he never heard any mention of the plaintiff being fired while he was in the office nor after the plaintiff returned to the shop.
7. Plaintiff was on a creeper on the floor pulling parts when Mr. Honeycutt approached and called to him. When plaintiff answered, Mr. Honeycutt said, if you think you can whip my ass, get up. The plaintiff dropped his tools as he got up from the creeper and then started laughing as he walked towards Mr. Honeycutt.
8. Mr. Honeycutt then drew a pistol from his pocket and fired three shots. The first shot missed the plaintiff and hit the concrete floor. The second shot hit plaintiff in the side of the right lower leg and the plaintiff said his leg gave way as he tried to take a step. The plaintiff said he was shot again as he fell or just as he hit the floor. This bullet entered the back, exited the shoulder, and struck the plaintiffs ear.
9. Mr. Dwiggins, Sr. testified that he had heard similar talk among the employees in the past and just considered it to be shop talk. Mr. Dwiggins, Sr. also stated that Mr. Honeycutt was loud and boisterous and yelled a lot. The Full Commission finds that there was no willful intent to injure by the plaintiff and but for Mr. Honeycutt having gone after the plaintiff with his pistol, no altercation or shooting would likely have occurred.
10. At the time of the shooting, the employment relationship between plaintiff and defendant had not been terminated. The plaintiff had never left the premises and was still working on behalf of the defendant-employer just moments before he was shot. Even if Mr. Honeycutt had terminated the plaintiffs employment, the plaintiff should be given a reasonable time to gather his belongings and leave the premises. Therefore, the full Commission finds that the plaintiff was injured while working within the course and scope of his employment.
11. There was an allegation by the employer that the plaintiff was under the influence of alcohol, but no evidence was produced to corroborate this allegation. Neither the police reports nor the hospital records make mention of alcohol or odor of alcohol with respect to the plaintiff.
12. The employer alleged and testified he had Donna Billings write a check to plaintiff after the plaintiff was allegedly terminated, but the Full Commission does not find this to be credible, in that Ms. Billings was not called to testify nor was the check produced. In addition, Mr. Honeycutt went back into the office after the shooting, remained there until the police arrived, and would have had ample time to write a check or have a check written by his employee.
 * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times. N.C. Gen. Stat. 97-3.
2. The employment relationship had not been severed at the time of plaintiffs injury in his employment, and the plaintiff was an employee under the Workers Compensation Act. N.C. Gen. Stat. 97-2.
3. There was no willful intent by the plaintiff to injure another employee and no evidence of plaintiffs being intoxicated; therefore, the defendant-employer is not relieved of the duty to pay compensation under the Workers Compensation Act. N.C. Gen. Stat. 97-12.
4. On 17 June 1996, the plaintiff sustained a compensable injury in his employment and, therefore, plaintiff is entitled to receive temporary total disability compensation at the rate of 2/3 of his average weekly wage per week for the time period beginning 17 June 1996 through the filing date of this decision, and until further order of the Industrial Commission. N.C. Gen. Stat. 97-2(6) and 97-29.
5. Defendant is obligated to provide to plaintiff such medical treatment as is reasonably required as a result of his specific traumatic incident or injury by accident to effect a cure, give relief or lessen plaintiffs disability. N.C. Gen. Stat. 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to an attorney fee herein approved, the defendants shall pay disability compensation at the rate of $200.00 per week for the time period beginning 17 June 1996 through the filing date of this decision, and until further order of the Industrial Commission. Any amounts which have accrued shall be paid to the plaintiff in a lump sum, subject to the attorney fee approved herein.
2. The defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury of 17 June 1996, as well as such medical treatment as is reasonably required to effect a cure, give relief or lessen plaintiffs disability, in accordance with the procedures of the North Carolina Industrial Commission.
3. A reasonable attorneys fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph one of this Award is approved for plaintiffs counsel and shall be deducted from the sum due plaintiff and paid as follows: twenty-five percent (25%) of the lump sum due plaintiff under paragraph one of this Award shall be deducted from that sum and paid directly to plaintiffs counsel; thereafter, plaintiffs counsel shall receive every fourth compensation check.
4. Defendants shall bear the costs of this proceeding.
This 20th day of October 1999.
 S/ ____________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ____________________ BERNADINE S. BALLANCE COMMISSIONER